S08A0282. TRAUTH v. THE STATE.
(657 SE2d 225)

MELTON, Justice.

Following the trial court's denial of his motion to withdraw his plea of guilty to the malice murder of his wife, Linda Sue Trauth,[1] Louis Trauth, acting pro se, appeals, contending that his trial attorneys rendered ineffective assistance of counsel in advising him regarding his guilty plea. For the reasons set forth below, we affirm.

1. Trauth pled guilty to the malice murder of his wife on August 2, 2006.[2] The facts, as set forth at the guilty plea hearing, show that, approximately two weeks before Trauth murdered his wife, she informed him that she was having an affair. On the day of the murder, Trauth made an audiotape in which he explained to his children that,

---

[1] On March 8, 2004, Trauth was indicted in Forsyth County for the malice murder, felony murder, and aggravated assault of Linda Sue Trauth, his wife. Trauth pled guilty to malice murder on August 2, 2006, and he was sentenced to life imprisonment. Trauth filed a timely motion to withdraw his guilty plea which he amended on November 30, 2006 and January 8, 2007. Following a hearing, the trial court denied the motion on June 26, 2007, and Trauth filed a notice of appeal on July 25, 2007. Trauth's appeal was timely docketed in this Court on October 19, 2007, and submitted for decision on the briefs.

[2] Trauth was represented by counsel at the guilty plea hearing, and he signed a statement acknowledging that he understood his plea and the rights he would be waiving by entering it. The trial judge thoroughly reviewed these rights with Trauth in accordance with *Boykin v. Alabama*, 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969), and Trauth waived them.

by the time they found the tape, he would have killed himself and his wife. The recording then stops, and, when it starts again, Trauth explains that he has murdered his wife and that he now intends to kill himself. Rather than committing suicide, however, Trauth called one of his daughters who, in turn, alerted the police. When police arrived at the Trauths' home, the body of Trauth's wife was discovered in the garage, and she had been shot twice in the head at close range. Police recovered a bullet from a couch cushion in an upstairs living room, and there was evidence that Trauth had tried to clean blood from the couch. A second bullet was found in the garage next to the body. Trauth fully admitted in the guilty plea hearing to the murder of his wife.

In addition to this evidence, the transcript of the hearing on Trauth's motion to withdraw his guilty plea shows that, in discussions with his attorneys following his arrest, Trauth provided additional details about the murder. Trauth explained that he initially shot his wife while she was sleeping on the upstairs couch. He then dragged her to the garage where he discovered that she was still alive and breathing. At that point, Trauth attempted to suffocate his wife with plastic sheeting, but, when that did not work, he shot her a second time. Shortly thereafter, police arrived at his home. Trauth again admitted this factual scenario at the hearing regarding his motion to withdraw his plea.

2. Trauth now contends that the trial court erred by denying his motion to withdraw his guilty plea, arguing that his trial attorneys were ineffective by failing to properly inform him about the possibility of a voluntary manslaughter defense, including such a defense based on committing a crime of passion.

> [A] defendant who pleads guilty and seeks to overturn his conviction because of counsel's errors must show both that counsel's performance was deficient and that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

(Citations and punctuation omitted.) *Harden v. Johnson*, 280 Ga. 464 (629 SE2d 259) (2006).

The record does not support Trauth's contentions. It shows that both of Trauth's trial counsel discussed the possibility of a voluntary manslaughter defense with him in some detail. Trial counsel properly informed Trauth, however, that any such defense was a "long shot" given the facts of the case. They told Trauth, in any event, that he would have nothing to lose by going to trial and that they were prepared to do so. In fact, in order to investigate the possibility of any

such manslaughter defense, Trauth's trial attorneys asked Dr. Dave Davis, a psychiatrist, to analyze Trauth's mental state, and they attempted to negotiate a deal with the State which would allow Trauth to enter a voluntary manslaughter plea deal. In addition, Trauth's attorneys reviewed the psychiatric report and informed Trauth that the conclusions therein were not particularly helpful to his chances of raising a viable voluntary manslaughter defense, given the factual scenario that he had described to them. Despite his attorneys' willingness to try his case, Trauth adamantly stated that he did not want to go to trial because he was clearly guilty of the offense and that he did not want to cause any further embarrassment to his family. Trauth reiterated this sentiment at his guilty plea hearing. Therefore, the record fully supports the trial court's conclusion that Trauth had full knowledge of the availability and viability of a voluntary manslaughter defense at the time that he entered his guilty plea.

Nonetheless, Trauth complains that his attorneys never showed him the psychiatric report issued by Dr. Davis, although they may have discussed it with him. More specifically, Trauth argues that, although the report indicated that he was generally competent at the time of the murder, it contains the following statement of which his attorneys did not make him aware: "The Court may wish to consider the circumstances of Mr. Trauth's behavior, in that it does appear to be a crime of passion." Trauth's attorneys did, however, make it clear that the viability of any type of voluntary manslaughter defense was highly unlikely. Given the facts of this case, it cannot be said that this advice, even considering the psychiatrist's conclusion, was inaccurate or unreasonable. See *Johnson v. State*, 282 Ga. 96 (2) (646 SE2d 216) (2007). Moreover, as pointed out by the trial court, Dr. Davis' statement would have been inadmissible at trial as an opinion on the ultimate issue and could not, in any event, have helped Trauth's case. See, e.g., *Weems v. State*, 268 Ga. 142 (3) (485 SE2d 767) (1997) (whether defendant acted in self-defense not beyond ken of jury).

Accordingly, the trial court did not err by denying Trauth's motion to withdraw his guilty plea. *Rios v. State*, 281 Ga. 181 (2) (637 SE2d 20) (2006).

3. For the first time on appeal, Trauth contends that appointed counsel who handled his motion to withdraw his guilty plea hearing provided ineffective assistance. The record shows, however, that this counsel withdrew following the hearing, and, rather than requesting a hearing regarding counsel's performance, Trauth filed his notice of appeal. A claim of ineffective assistance of counsel must be filed at the earliest practicable moment, or it is considered to be waived. *White v. Kelso*, 261 Ga. 32 (401 SE2d 733) (1991). In this case, Trauth took over his own case following his counsel's departure and did nothing to

raise his ineffective assistance claims, although he could have filed a motion with the trial court at that time. Instead, Trauth chose to file a notice of appeal. In doing so, Trauth failed to raise his claim of ineffective assistance at the earliest practicable moment. See *Threlkeld v. State*, 250 Ga. App. 44 (1) (550 SE2d 454) (2001).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 11, 2008.

Louis F. Trauth, *pro se.*

*Penny A. Penn, District Attorney, Thurbert E. Baker, Attorney General, Christopher R. Johnson, Assistant Attorney General*, for appellee.