In the Supreme Court of Georgia

Decided: September 22, 2014

S14A0979. TRAUTH v. THE STATE.

MELTON, Justice.

This is the second appearance of this case in this Court. In Louis F. Trauth's first appeal, in which, as explained more fully below, Trauth was improperly forced to proceed pro se, this Court affirmed the trial court's decision to deny Trauth's motion to withdraw his guilty plea for malice murder. See Trauth v. State, 283 Ga. 141 (657 SE2d 225) (2008). New counsel began representing Trauth after his first appeal, and this new counsel filed a habeas petition on Trauth's behalf on September 16, 2008. Following a hearing, the habeas court granted the petition on January 15, 2014, granting Trauth "an out-of-time direct appeal from the trial court's denial of [Trauth's] motion to withdraw his guilty plea." See Roberts v. Caldwell, 230 Ga. 223 (196 SE2d 444) (1973) (proper remedy for defendant who was improperly denied counsel and forced to proceed pro se in his first direct appeal was to allow him to pursue second, out-of-time, direct appeal). The habeas court also gave Trauth thirty

days "to pursue post conviction remedies." Trauth then filed a Notice of Out-of-Time Appeal on February 10, 2014, which placed this case before us for a second time. On appeal, he argues, among other things, that his trial counsel and post conviction counsel were ineffective. For the reasons that follow, we affirm.

The record reveals that Trauth pled guilty on August 2, 2006 to the malice murder of his wife. The facts at the guilty plea hearing revealed that, approximately two weeks before the murder, Trauth's wife had told him that she was having an affair. On the day of the murder, Trauth recorded an audiotape. In the tape, he explained to his children that, by the time they found the tape, he would have killed himself and his wife. The recording then stops, and, when it starts again, Trauth explains that he has killed his wife and that he now intends to kill himself. However, rather than committing suicide, Trauth called one of his daughters who, in turn, alerted the police. When police arrived at the Trauths' home, Trauth's wife's body was discovered in the garage. She had been shot twice in the head at close range. Police recovered a bullet from a couch cushion in an upstairs living room, and there was evidence that Trauth had tried to clean blood from the couch. A second bullet was found in the garage next to the body. At the guilty plea hearing, Trauth fully admitted to the murder of his

2

wife.

On November 14, 2006, Trauth filed a pro se motion to withdraw his guilty plea and a motion for the appointment of counsel. New counsel was appointed to represent Trauth, and this counsel filed an amended motion to withdraw Trauth's guilty plea on March 1, 2007. The transcript of the hearing on Trauth's motion to withdraw his guilty plea shows that, in discussions with his attorneys following his arrest, Trauth provided additional details about the murder. Trauth explained that he initially shot his wife while she was sleeping on the upstairs couch. He then dragged her to the garage where he discovered that she was still breathing. At that point, Trauth attempted to suffocate his wife with plastic sheeting, but, when that did not work, he shot her a second time. Shortly thereafter, police arrived at his home. The trial court stated at the hearing that Trauth's motion to withdraw his guilty plea was being denied. The attorney who represented Trauth at the hearing on his motion to withdraw the guilty plea then withdrew from representing Trauth with the trial court's permission. However, the trial court never informed Trauth that, as an indigent, he was entitled to appointed counsel on appeal from the denial of his motion to withdraw his guilty plea. Trauth was then left to pursue his first appeal pro se, and this Court

3

affirmed the trial court's decision to deny Trauth's motion, finding that Trauth's claims of ineffective assistance of counsel were without merit. See Trauth, supra.

1. As an initial matter, the habeas court was correct to conclude that Trauth, as an indigent, was entitled to the appointment of new counsel for his first appeal after his post conviction counsel was allowed to withdraw from representing him. Indeed,

> [i]t is beyond question that an indigent has the right to appointed counsel to assist him on direct appeal. Douglas v. California, 372 U.S. 353 (83 SC 814, 9 LE2d 811) (1963); and, an individual desiring an appeal need not, once a responsible state authority knows of the desire to appeal and knows of the status of indigency, specifically request appointment of appellate counsel. Swenson v. Bosler, 386 U.S. 258 (87 SC 996, 18 LE2d 33) (1967).

Roberts, supra, 230 Ga. at 224. Furthermore, where, as here, a pro se defendant has been improperly denied counsel for his first appeal, he is entitled to relief in the form of having counsel appointed "to determine if there is any justifiable ground for an appeal from the original convictions, and if such determination is in the affirmative, . . . file[] and prosecute[] [a new direct appeal] with the benefit of counsel." Id. In this regard, because the defendant now has the benefit of counsel to pursue on appeal "any justifiable ground" relating to his original

4

convictions (or, in this case, his guilty plea), even those issues that were raised by the defendant in his first pro se appeal can be considered anew in his second appeal. In this sense, much in the way that the grant of a new trial has the effect of "set[ting] aside all proceedings in the old trial," Reagan v. Reagan, 221 Ga. 173, 174 (143 SE2d 736) (1965), the grant of a new appeal to a defendant who was improperly forced to proceed pro se in his first appeal would have the effect of eliminating any proceedings relating to that defendant's first appeal.

It is important to note that cases such as the instant one in which a defendant is improperly deprived of any attorney at all for his first appeal are distinguishable from those cases where a defendant *has* an attorney who prosecutes the defendant's first appeal but renders ineffective assistance for that appeal. In cases where a defendant has an ineffective appellate attorney who prosecutes the defendant's first direct appeal, the defendant is not entitled to a new appeal as a remedy for that counsel's ineffectiveness. See, e.g., Milliken v. Stewart, 276 Ga. 712 (583 SE2d 30) (2003) (habeas court erred in ordering second direct appeal as remedy for appellate counsel's ineffectiveness in failing to raise meritorious issue in first appeal). See also Richards v. State, 275 Ga. 190, 191 (563 SE2d 856) (2002) (Where the defendant was represented by

5

counsel in his first direct appeal in 1993 [Richards v. State, 263 Ga. 65 (428 SE2d 84) (1993)], and his conviction was affirmed in that appeal, the defendant could not obtain an out-of-time appeal nine years later, as he was "not entitled to a second direct appeal from his judgment of conviction"). Instead, the proper remedy to ameliorate an appellate counsel's ineffectiveness for failing to raise a meritorious issue on appeal is "to order a new trial." Milliken, supra, 276 Ga. at 714. This is so because, in those appeals where an outright acquittal would not be the appropriate remedy for a successful appeal, counsel's failure to raise a meritorious issue on appeal necessarily would have caused the defendant's conviction to be affirmed rather than reversed, which in turn would have deprived the defendant of the new trial that he would have otherwise received had his appeal been properly presented. See Nelson v. Hall, 275 Ga. 792, 793-794 (573 SE2d 42) (2002) (To establish ineffective assistance of appellate counsel, a defendant must show "that appellate counsel was deficient in failing to raise an issue on appeal" and that "a reasonable probability [exists] that the outcome of the appeal would have been different" had the issue been raised) (citations and punctuation omitted); Stanford v. Stewart, 274 Ga. 468, 471 (2) (554 SE2d 480) (2001) (where appellate counsel's deficient failure to raise

6

meritorious issue on appeal deprived defendant of a new trial, prejudice to defendant was "obvious"). In this sense, where an appellate attorney is found to have been ineffective for a defendant's first appeal, the type of prejudice necessary to warrant the granting of a new trial has been established, which makes the granting of a new trial the appropriate remedy in such cases. On the other hand, in a situation where a defendant has been improperly denied his right to any attorney at all in his first direct appeal, an appellate court has no way of knowing what issues an attorney would have raised in that appeal that may have been beneficial to the defendant or how those issues would have been presented. In other words, even if a pro se defendant were capable of raising meritorious issues on appeal on his own without an attorney, this still would not inform an appellate court of any meritorious issues that an attorney might have raised. In this regard, the grant of a new trial would not remedy the harm created by the violation of the pro se defendant's right to have an attorney for his first appeal, as any issues that would have been raised by an attorney that could have led to additional relief for the defendant in any new trial still would never have been presented to the appellate court. Accordingly, the only way to remedy the harm created from the defendant having been deprived of the right to an attorney

7

to present his or her first appeal is to grant the defendant an attorney for the purposes of presenting a brand new appeal. Roberts, supra.

2. Moving to the merits of this appeal, Trauth contends that the attorney who represented him at the hearing on the motion to withdraw his guilty plea rendered ineffective assistance because counsel failed to call important witnesses and consistently insisted that Trauth had "no defense" to the murder charge against him when in fact he did have defenses that he could have asserted. However, Trauth has presented nothing for this Court to review with respect to this claim, because he did not request a hearing before the trial court in order to properly raise this specific ineffectiveness claim before filing his notice of appeal. See Chatman v. State, 265 Ga. 177, 178 (2) (453 SE2d 694) (1995) ("The grant of an out-of-time appeal constitutes permission to pursue . . . [appropriate] post-conviction remed[ies,]" and a claim of ineffective assistance "may not be asserted in an out-of-time appeal unless the defendant's new appellate counsel files [an appropriate motion] after the grant of the out-of-time appeal and raises the ineffectiveness claim") (citations and punctuation omitted).

3. In two enumerations, Trauth contends that the trial court erred by

denying his motion to withdraw his guilty plea, arguing that his trial attorneys were ineffective by failing to properly inform him about the possibility of voluntary manslaughter and involuntary intoxication defenses, including a defense based on committing a crime of passion.

> [A] defendant who pleads guilty and seeks to overturn his conviction because of counsel's errors must show both that counsel's performance was deficient and that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

(Citations and punctuation omitted.) Harden v. Johnson, 280 Ga. 464 (629 SE2d 259) (2006).

The record does not support Trauth's contentions. To begin with, it shows that both of Trauth's trial counsel discussed the possibility of voluntary manslaughter defense with him in some detail. Trial counsel properly informed Trauth, however, that any such defense was a "long shot" given the facts of the case. They told Trauth, in any event, that he would have nothing to lose by going to trial and that they were prepared to do so. In fact, in order to investigate the possibility of any such manslaughter defense, Trauth's trial attorneys asked Dr. Dave Davis, a psychiatrist, to analyze Trauth's mental state, and they attempted to negotiate a deal with the State which would allow Trauth

9

to enter a voluntary manslaughter plea deal. In addition, Trauth's attorneys reviewed the psychiatric report and informed Trauth that the conclusions therein were not particularly helpful to his chances of raising a viable voluntary manslaughter defense, given the factual scenario that he had described to them. Despite his attorneys' willingness to try his case, Trauth adamantly stated that he did not want to go to trial because he was clearly guilty of the offense and that he did not want to cause any further embarrassment to his family. Trauth reiterated this sentiment at his guilty plea hearing. Furthermore, the record shows that trial counsel investigated the possibility of an involuntary intoxication defense based on prescription drugs that Trauth had been taking, and that trial counsel discussed with Trauth the viability of this possible defense. Therefore, the record fully supports the trial court's conclusion that Trauth had full knowledge of the viability of the defenses available to him at the time that he entered his guilty plea.

Nonetheless, Trauth complains that his attorneys never showed him the psychiatric report issued by Dr. Davis and never called him as a witness at the hearing on the motion to withdraw his guilty plea, although they may have discussed Dr. Davis' report with him. More specifically, Trauth argues that,

although the report indicated that he was generally competent at the time of the murder, it contains the following statement of which his attorneys did not make him aware: "The Court may wish to consider the circumstances of Mr. Trauth's behavior, in that it does appear to be a crime of passion." Trauth's attorneys did, however, make it clear that the viability of any type of voluntary manslaughter defense was highly unlikely. Given the facts of this case, it cannot be said that this advice, even considering the psychiatrist's conclusion, was inaccurate or unreasonable. See Johnson v. State, 282 Ga. 96 (2) (646 SE2d 216) (2007). Nor would calling Dr. Davis as a witness at the hearing on the motion to withdraw the plea have changed any of these facts. Moreover, as pointed out by the trial court, Dr. Davis' statement would have been inadmissible at trial as an opinion on the ultimate issue and could not, in any event, have helped Trauth's case. See, e.g., Weems v. State, 268 Ga. 142 (3) (485 SE2d 767) (1997) (whether defendant acted in self-defense not beyond ken of jury).

Accordingly, the trial court did not err by denying Trauth's motion to withdraw his guilty plea. Rios v. State, 281 Ga. 181 (2) (637 SE2d 20) (2006).

4. Trauth's motion to remand this case to the trial court in order to further develop the record is denied.

Judgment affirmed. All the Justices concur.