## S04P0795. HENRY v. THE STATE.
### (604 SE2d 826)

FLETCHER, Chief Justice.

After pleading guilty to murder and related crimes, Keith Darnel Henry waived the right to have a jury determine his sentence. The trial court found beyond a reasonable doubt that Henry committed the murder while engaged in burglary, armed robbery and kidnapping with bodily injury.[1] Based on that finding, the trial court

---

[1] Henry committed the crimes on August 31, 1999. On May 9, 2001, the grand jury indicted him for the following offenses: malice murder; ten alternative counts of felony murder; impersonating an officer; possession of a weapon during the commission of a crime; and, possession of a firearm during the commission of a crime. The State filed written notice of intent

sentenced him to death, and Henry appeals.[2] Because the trial court erred in allowing the State to make unsupported allegations that Henry posed a future danger, we reverse.

The evidence presented at the bench trial showed that Henry and his wife gained entry into the home of Sheila Dates and her daughter by impersonating FBI agents. Once inside the residence, they bound both women, taped the younger victim's mouth, and then began questioning Dates regarding the safe at the check cashing business where she worked. Because the procedure for opening the safe proved to be more complicated than anticipated, Henry directed his wife to take Dates to the business while he remained in the residence. He told Dates that he would merely hold her daughter as a hostage. However, Henry admitted in his post-arrest confession that he strangled her to death just 15 minutes after his wife and Dates left the house.

While attempting to open the safe, Dates was told that she was chosen as a victim because she had no husband and was, therefore, "more vulnerable" than her co-worker. Once the safe was opened, she was bound and gagged with a plastic bag. After speaking with her husband by phone, Henry's wife strangled Dates with a rope. However, she survived the attack, and called for help when she regained consciousness.

After committing the crimes in Georgia, Henry and his wife robbed a bank in Tennessee and then traveled to New Jersey. There, FBI agents discovered the couple in a hotel room. Henry surrendered to the agents, but his wife committed suicide.

When viewed most strongly in support of the death sentence, the evidence was sufficient to authorize the trial court to find that the State proved the existence of statutory aggravating circumstances beyond a reasonable doubt.[3]

1. Henry makes several challenges to his death sentence. First, he contends that the trial court erred in allowing the State to argue during the sentencing phase that he deserved the death penalty

---

to seek the death penalty on May 14, 2001. Having previously pled not guilty, Henry entered guilty pleas to all charges on January 4, 2002. The trial court conducted the bench trial on sentencing on September 9, 2002. The following day, the trial court, treating the felony murder charges as mere surplusage (see *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993)), sentenced Henry to death for malice murder, and to consecutive five-year prison terms for each of the remaining related charges. Henry filed a motion for new trial on May 29, 2003, which the trial court denied on October 7, 2003. Henry filed a timely notice of appeal on November 5, 2003. The case was docketed in this Court on January 15, 2004, and oral argument was heard on May 11, 2004.

[2] OCGA § 17-10-30 (b) (2).

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); OCGA § 17-10-35 (c) (2).

because he posed a future danger. Because the State's argument was not supported by evidence in the record, we agree.

The State argued that Henry deserved the death penalty because he posed a future danger to those in the prison system. This argument was based solely on the crimes Henry committed in this case. The relevant portions of the State's argument are as follows:

> [Henry] has demonstrated completely that he is willing to kill to get what he wants. He's willing to kill to get what he wants. He tells [a detective] that he wants to die. I don't know if that's still his wish or not, but I submit to the Court if that's still his wish, that he's willing to kill to do it. He's willing to kill to get it. If he changes his mind he wants to escape from prison, I submit that he's willing to kill to do it. And everyone that comes into contact with him is going to be at risk for that. Other inmates, guards, nurses that work the prison system, visitors that come there, anybody that is in his way for him to get what he wants is — is at risk. And I submit to the Court, and I mean this with all due respect, that no matter what this Court decides that you are going to be handing down a death sentence for somebody.

After several objections from Henry's trial counsel, which were overruled, the State continued:

> Right now there is — as an example of my argument for future dangerousness, there is a kid in high school that wants to be a corrections officer, and he has no idea that in a few minutes you are going to decide whether or not [Henry] gets the death penalty for what he did, or you're going to give him a death sentence. Because sometime in the future he is going to come in contact with [Henry] and he is going to be in the way of what [Henry] wants and he is going to die from it.

An argument that a death sentence is necessary to prevent future dangerous behavior by the defendant in prison must be based on evidence suggesting that the defendant will be dangerous in prison.[4] "Arguments addressing [future dangerousness] are not improper if based on evidence adduced at trial."[5] But it is improper for the State to argue that a defendant will kill in prison simply because

---

[4] See *Spencer v. State*, 260 Ga. 640, 653 (398 SE2d 179) (1990); *Ross v. State*, 254 Ga. 22, 34 (7) (326 SE2d 194) (1985).

[5] *Ross*, 254 Ga. at 34 (7).

he killed while free.[6] The cases cited by the dissent all flow from *Ross v. State*[7] and its predecessors,[8] where we made clear that the State must base its arguments on evidence in the record. In this case, there was no evidence presented to justify the State's argument that sentencing Henry to life without parole would be a death sentence for a future prison guard. There was only the conjecture and opinion of the State. The State's only justification for this argument was that Henry had committed the murder in this case, and thus it was error for the trial court to allow it.

The dissent argues that this Court cannot review Henry's enumeration of error because it was not included in his first appellate brief. But Henry properly preserved the error below and included the enumeration in an amended appellate brief filed before we heard oral argument. We have previously held that such enumerations are properly before us, and that our review is not limited to a plain error standard.[9] Therefore, Henry need not prove that the improper argument changed the result in his sentencing phase.[10] Instead, we ask whether it is highly probable that the trial court's error did not contribute to the sentence of death.[11] Because we cannot reach this conclusion, we must reverse Henry's sentence.

2. Henry also contends that it is unconstitutional for a trial court, rather than a jury, to impose the death penalty. As a matter of constitutional law, all defendants are "entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment."[12] But the right to have a jury determine whether aggravating circumstances exist so as to authorize a death sentence is subject to the same principles of waiver as apply in any other criminal case.[13] Here, Henry waived his right to a jury trial

---

[6] *Pye v. State*, 269 Ga. 779, 789-791 (505 SE2d 4) (1998) (Fletcher, P. J., concurring specially).

[7] 254 Ga. 22.

[8] *Spivey v. State*, 253 Ga. 187, 190 (4) (319 SE2d 420) (1984); *Horton v. State*, 249 Ga. 871, 875 (7) (295 SE2d 281) (1982).

[9] *Pittman v. State*, 273 Ga. 849, 850 (4) (546 SE2d 277) (2001). Compare *Lynd v. State*, 262 Ga. 58, 60 (8) (414 SE2d 5) (1992) (plain error standard proper where no objections made at trial and where enumerations raised for the first time over two months after oral argument). The dissent relies on *Hittson v. State*, 264 Ga. 682, 690-691 (15) (449 SE2d 586) (1994), to support its argument that Henry's future dangerousness claim must be analyzed under a plain error standard. But the sole case relied on in *Hittson* was *Lynd*, which as noted above does *not* support the dissent's argument. To the extent that *Hittson* can be read to have extended our ruling in *Lynd* to preclude even errors preserved below and raised before oral argument, it is hereby overruled.

[10] Compare *Braley v. State*, 276 Ga. 47, 54 (572 SE2d 583) (2002); *Pye*, 269 Ga. at 791.

[11] *Cunningham v. State*, 248 Ga. 835, 837 (4) (286 SE2d 427) (1982).

[12] *Ring v. Arizona*, 536 U. S. 584, 589 (122 SC 2428, 153 LE2d 556) (2002).

[13] See *Blakely v. Washington*, 542 U. S. __ (124 SC 2531, 2541, 159 LE2d 403) (2004); *Head v. Hill*, 277 Ga. 255, 258 (II) (A) (2) (587 SE2d 613) (2003).

as to his sentence and, in accordance with OCGA § 17-10-32, the trial court was authorized to conduct the bench trial to determine whether the death penalty should be imposed.

3. Henry contends that his post-arrest confession was inadmissible at sentencing. After holding a *Jackson-Denno* hearing, the trial court found that Henry had properly been advised of his *Miranda* rights,[14] and that his confession was knowingly and voluntarily given, and that there was no coercive police activity. We find no error in the trial court's ruling that this confession was admissible.[15]

4. Permitting Dates to testify during the sentencing phase regarding the impact on her of her daughter's murder was not error.[16]

5. Henry alleges additional errors regarding his death sentence that we need not address because we are reversing that sentence. We do note Henry's claim the trial court improperly invoked religion before rendering a death sentence, and reiterate that a sentencing body should not resort to religion or any other source except Georgia law when deciding on an appropriate sentence.[17]

*Judgment reversed. All the Justices concur, except Carley, Thompson and Hines, JJ., who dissent.*

CARLEY, Justice, dissenting.

Wholly disregarding all applicable court rules and controlling case law, the majority artificially extends the time for filing enumerations of error to at least the time of oral argument and reverses the valid death sentence imposed in this case in which the appellant pled guilty to the malice murder of Regina Dates and the other crimes listed in footnote one of the majority opinion. Because I cannot countenance such a misuse of appellate authority, I am compelled to dissent.

1. Our rules require that appellants and cross-appellants in both criminal and civil cases file their enumerations of error "within 20 days after" the docketing of their cases. Supreme Court Rules 10 and 19. See also OCGA § 5-6-40 (authorizing court rules regarding time for filing appellate briefs). This time constraint ensures fairness to opposing parties and promotes meaningful oral argument. Upon request, this Court, at its discretion, may extend the time for filing enumerations of error. Supreme Court Rule 12. See also *Pittman v. State*, 273 Ga. 849, 850 (4) (546 SE2d 277) (2001) (where this Court granted a motion to allow a supplemental enumeration of error after

---

[14] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[15] See *Lee v. State*, 270 Ga. 798, 800 (2) (514 SE2d 1) (1999); OCGA § 24-3-50.

[16] OCGA § 17-10-1.2 (a) (1). Compare *Lucas v. State*, 274 Ga. 640, 643 (2) (b) (555 SE2d 440) (2001) (improper to admit victim impact testimony in the guilt-innocence phase).

[17] *Carruthers v. State*, 272 Ga. 306, 308-311 (2) (528 SE2d 217) (2000).

the deadline for filing an initial brief had passed). However, Henry did not request an extension of time, despite the fact that he filed his second enumeration of errors months after the deadline imposed for filing his appellate brief and only four days before oral argument. Even if Henry had sought an extension, granting such a request would be improvident and unfair for the same reasons underlying our refusal to permit the expansion of enumerations of error at oral arguments. See *Butts v. State*, 273 Ga. 760, 771 (31) (546 SE2d 472) (2001). Clearly, the rules of this Court become meaningless when they are not enforced against a party who does not comply with them, and who does not even request an exception to them. Nevertheless, the majority, by ignoring Henry's complete disregard of the established rules of this Court, apparently adopts a novel and unworkable unpublished rule whereby additional enumerations of error may be filed at any time prior to oral argument in all cases.

The Court today also completely misconstrues or ignores the holding in *Lynd v. State*, 262 Ga. 58 (414 SE2d 5) (1992). *Lynd* makes it clear that issues not raised in a timely fashion on appeal will be treated as entirely waived, except when the limited exception of plain error applies. *Lynd v. State*, supra at 60 (8). The source of the plain error rule in death penalty cases is the Unified Appeal Procedure (UAP) IV (B) (2), which states the following:

> The Supreme Court shall review each of the assertions of error *timely raised* by the defendant *during the proceedings in the trial court . . .* regardless of whether error is enumerated in the Supreme Court. However, *except in cases of plain error*, assertions of error not raised on appeal *shall be waived.* (Emphasis supplied.)

Thus, "[i]n Georgia[,] there is a . . . rule, applicable in death penalty cases only, which allows for appellate review of assertions of error *not raised on appeal* in cases of plain error. [Cits.]" (Emphasis in original.) *Owens v. State*, 263 Ga. 99, 101 (2) (428 SE2d 793) (1993). "Except in cases of 'plain error,' assertions of error not timely raised on appeal are deemed waived. [Cits.]" *Hittson v. State*, 264 Ga. 682, 690 (15) (449 SE2d 586) (1994), overruled on other grounds, *Nance v. State*, 272 Ga. 217, 220 (2), fn. 2 (526 SE2d 560) (2000). "If assertions of error 'not raised' are waived, it follows that assertions of error not *timely* raised are also waived." (Emphasis in original.) *Lynd v. State*, supra. Therefore, in a Georgia death-penalty case, a claim of error that is raised below, but not timely asserted on appeal, is nevertheless reviewed under the plain error standard. The majority apparently confuses the applicable plain error rule in Georgia with the much broader and more lenient federal rule "allowing for appellate review

of assertions of error raised for the first time on appeal where the asserted error affects substantive rights . . . ." *Owens v. State*, supra. Where, as here, the defendant in a death-penalty case in Georgia preserves an issue below, but then fails to raise it in a timely fashion on appeal, our review clearly is limited to a plain error standard. *Hittson v. State*, supra.

This case cannot be distinguished from *Hittson*, in which the defendant objected in the trial court, but did not raise the issue on appeal until three days prior to oral argument. Likewise, Henry raised the issue of the State's argument regarding his future dangerousness just four days prior to oral argument in this Court. Under *Lynd* and its progeny, this untimely enumeration is deemed waived, except for the limited plain error review to which Henry is entitled under the UAP based on his objection at trial. This Court has defined that limited review as follows:

> "Plain error" is that which is "so clearly erroneous as to result in a likelihood of a grave miscarriage of justice" or which "seriously affects the fairness, integrity[,] or public reputation of a judicial proceeding." [Cit.]

*Lynd v. State*, supra at 61 (8), fn. 2. See also *Hittson v. State*, supra at 691 (15). Accordingly, I dissent to the majority's application of the obviously incorrect standard of review in this case.

2. Even assuming, however, that plain error is not the appropriate standard of review, the majority does not even acknowledge, much less apply, existing relevant case law in its analysis of the State's argument that Henry would represent a danger to others in prison. The majority concludes that the admissible evidence of the crimes for which Henry was convicted does not authorize such a closing argument by the District Attorney. However, the only authority cited for that proposition is a special concurrence by a single Justice. *Pye v. State*, 269 Ga. 779, 789-791 (505 SE2d 4) (1998) (Fletcher, P. J., concurring specially). The new rule which the Court now creates directly contradicts the actual holding of the *majority* opinion in *Pye*, even though, until today, we have followed that holding in subsequent cases. *Braley v. State*, 276 Ga. 47, 54 (36) (572 SE2d 583) (2002); *Jones v. State*, 273 Ga. 231, 234 (4) (539 SE2d 154) (2000). Indeed, the special concurrence in *Pye* would have constituted a dissenting opinion except for its author's conclusion that the alleged error was not reversible. Nevertheless, without offering any explanation, the majority ignores the clear holding of *Pye*.

In *Pye*, just as in Henry's case, the prosecutor's argument that the defendant would kill a corrections officer was based entirely on the evidence concerning the crimes for which Pye was convicted in the

guilt/innocence phase of the trial. "That Pye could harm a prison guard is a reasonable inference, considering that he had been convicted of several violent crimes, including murder." *Pye v. State*, supra at 788 (19). Henry's case is indistinguishable from *Pye*, because Henry's crimes suggested the possibility of future violence in prison just as much as Pye's crimes did. The evidence shows that, in order to obtain money and avoid arrest, Henry selected the victims based on their vulnerability, planned to kill them, watched them for three days, impersonated a federal law enforcement officer, entered the victims' home and bound them, strangled one victim to death, and directed his wife to kill the other. Therefore, the State's closing argument regarding Henry's possible future dangerousness was clearly a reasonable evidentiary inference. If the evidence in this case did not raise a reasonable inference of future dangerousness, I submit that it is not possible to make such a showing as will convince a majority of this Court in any death-penalty case.

Furthermore, "[a] trial judge sitting alone is presumed to know the law. [Cit.]" *Crossley v. State*, 261 Ga. App. 250, 252 (582 SE2d 204) (2003). Therefore, we must presume that the trial judge in Henry's case was at least as capable as the jury in *Pye* of remaining objective in the face of the State's use of its "considerable latitude in imagery and illustration in making its argument. [Cit.]" *Pye v. State*, supra at 788 (19). Moreover, the State's argument could not have had an adverse impact on the fact finder's consideration of any residual doubt at sentencing, since Henry pled guilty. See *Burgess v. State*, 264 Ga. 777, 788 (32) (450 SE2d 680) (1994).

Under all of the circumstances, I submit that it is highly probable that, if the trial court did err, the error did not contribute to the sentence of death. Thus, even assuming that the majority correctly applies the less stringent standard of review, the State's argument regarding future dangerousness did not constitute reversible error. Accordingly, the alleged error could not possibly meet the higher, correct plain error standard. In this connection, the majority apparently would concede that the plain error standard is not met, particularly since even the special concurrence in *Pye v. State*, supra at 791, agreed that there was not any reasonable probability that the same future danger argument there changed the result in the sentencing phase. Therefore, regardless of which standard of review is appropriate, the death sentence in this case should be affirmed.

I am authorized to state that Justice Thompson and Justice Hines join in this dissent.

DECIDED NOVEMBER 8, 2004.

*Holly L. Geerdes, Patricia F. Angeli, Steven M. Frey*, for appellant.

*Robert E. Keller, District Attorney, Todd E. Naugle, Assistant District Attorney, Thurbert E. Baker, Attorney General, Mitchell P. Watkins, Assistant Attorney General*, for appellee.