In the Supreme Court of Georgia

Decided: September 14, 2015

S15A1273. ALLEN v. THE STATE.

MELTON, Justice.

Following a jury trial, Chad Ashley Allen was found guilty of murder, aggravated assault, and various other offenses in connection with the shooting death of Robert Nichols.[1] On appeal, Allen contends that the trial court erred by

[1]On April 17, 2013, Allen was indicted for malice murder, felony murder predicated on aggravated assault, aggravated assault, possession of a firearm during the commission of a felony, possession of a firearm by a convicted felon, and concealing the death of another. Following a June 24-28, 2013 jury trial, Allen pled guilty to the possession of a firearm by a convicted felon count, and was found guilty by the jury on all of the remaining counts. On June 28, 2013, Allen was sentenced to life in prison without the possibility of parole for malice murder; five years concurrent for possession of a firearm during the commission of a felony; ten years concurrent for concealing the death of another; and five years consecutive for the possession of a firearm by a convicted felon count to which he had pled guilty. The felony murder count was vacated by operation of law (Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993)), and the remaining aggravated assault count merged with the malice murder count for sentencing purposes. Allen filed a motion for new trial on July 2, 2013, which he amended on January 10, 2014. The motion was denied on December 19, 2014. Allen's timely appeal was docketed in this Court for the April 2015 term and orally argued on July 13, 2015.

improperly commenting on the evidence through one of its jury charges, improperly removed a juror, and violated Allen's constitutional right to be present at all critical stages of the trial. For the reasons that follow, we affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence reveals that, on November 2, 2009, Allen was the victim of a home invasion where five to six masked men with guns forced their way into his home shouting "Narcotics." During the invasion, Allen was held at gunpoint, the house was ransacked, and two items were stolen. Allen named multiple people to police whom he believed were involved, but the police were unable to connect Nichols to the home invasion during the course of their investigation. In the weeks following the robbery, Allen began accusing several of his friends of being involved in the home invasion, including T. R. Crow. On November 6, 2009, Allen shot Crow from the passenger seat of a car in Rockdale County, and this incident of aggravated assault was admitted into evidence as a similar transaction in Allen's trial relating to Nichols' murder. On November 23, 2009, Sam Dawkins received a call from Allen, during which Allen told Dawkins he was going to kill the people who had robbed him and that he needed a gun. Dawkins gave Allen a shotgun. Later that day, Allen returned to Dawkins'

2

residence in a pickup truck, and Dawkins observed that Allen was pulling the rings off of Nichols' dead body in the bed of this truck. At that time, Allen had a "machine gun" slung around his body and was wearing a bullet-proof vest, mechanic's gloves, and a blue jumpsuit. Allen turned off his cell phone and said "they are not going to track me." Allen then admitted to Dawkins that he had killed Nichols by shooting him several times because he believed that Nichols was one of the men involved in the home invasion. On December 6, 2009, Nichols' partially concealed body was found in a wooded area in Walton County, Georgia.

This evidence was sufficient to enable a rational trier of fact to find Allen guilty of all the crimes of which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Allen contends that the trial court erred and improperly commented on the evidence by giving a jury charge which implied that Allen himself possessed and used the murder weapon in this case, despite the fact that the murder weapon was never recovered. The charge stated:

> The state is not required to admit into evidence the offensive weapon used by the defendant in order to prove the defendant guilty of murder or aggravated assault. The presence of an offensive

3

weapon or the appearance of such may be established by circumstantial evidence. Some physical manifestation is required or some evidence from which the presence of a weapon may be inferred, such as the nature, kind and location of the wound inflicted.

As an initial matter, the trial court's instruction was legally correct, in that it is true that the State need not "admit into evidence the . . . weapon used by the defendant in order for the defendant to be found guilty of the crime involving the weapon." Wells v. State, 295 Ga. 161, 167 (3) (758 SE2d 598) (2014) (citing Lattimer v. State, 231 Ga. App. 595, 594 (499 SE2d 671) (1998)). Morever, even when one considers that the charge here was given after the charges listing the elements of murder and aggravated assault, it cannot be said that the judge was offering an opinion that Allen actually possessed a weapon or that the State did not have to prove the existence of such a weapon through circumstantial evidence. Indeed, the jury charge, when read in context, still leaves the jury to decide, based on its own evaluation of the evidence, whether the State has met its burden of proving that Allen actually possessed and used any weapon to shoot and kill Nichols. In this connection, the use of the phrase "the defendant" instead of "a defendant" in the charge also would not amount to a comment on the evidence, as, again, the charge makes clear that it is up to the jury to decide

4

whether the State has proven the existence of any weapon and that the defendant used such a weapon to commit the crimes at issue. See Wells, supra. (jury charge which included the phrase "the deadly weapon used by the defendant," was clearly a reference to an element of the crime that the State had to prove, and not a factual assertion by the court amounting to a comment on the evidence).

3. Allen claims that the trial court erred by removing a juror who was unable to reach a decision with the other jurors during deliberations. Pursuant to OCGA § 15-12-172, trial courts may replace a juror with an alternate juror if "a juror dies, becomes ill, [or] upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause." Here, the record reveals that (1) the removed juror stated several times that she did not want to form an opinion about the case, and (2) further stated that she was actually incapable of making the decision in the case because she could not "play God" and because her moral beliefs precluded her from making a decision in the case. The trial court made a proper and thorough inquiry to the juror's inability to make a decision based on her moral beliefs, and we find no abuse of discretion in the trial court's decision to remove the juror. See Williams v. State,

272 Ga. 828 (5) (537 SE2d 39) (2000) (trial court properly removed a juror where her religious beliefs precluded her from forming an opinion about the case).

4. Allen claims that the trial court's ex parte conversation with one of the jurors violated his constitutional right to be present at all critical stages of the trial. See Hanifa v. State, 269 Ga. 797 (6) (505 SE2d 731) (1998). However, the record shows that Allen affirmatively waived his constitutional right to be present at each bench conference. Indeed, at the beginning of the trial, the following exchange took place between the trial court and Allen's counsel:

> THE COURT: [A]s I understand it, . . . Mr. Allen's presence at each bench conference is being waived; is that correct?
>
> [COUNSEL]: That is correct. And I've assured [Allen] I'll explain to him what happen[s], but there's no need for him to go up.
>
> THE COURT: Just wanted to note that for the record.

Allen, therefore, cannot complain on appeal that his right to be present at the bench conference in question was violated. See Wilson v. State, 212 Ga. 73 (90 SE2d 557) (1955) (although the accused has a right to be present at all stages of the trial, this right can be waived by the defendant or by an authorized waiver of counsel when made in defendant's presence or by his express authority).

6

Counsel also had the opportunity to object immediately after the trial court judge explained the situation involving the juror, but did not do so. See Hanifa, supra. (defendant waived her right to review by failing to object or seek mistrial regarding a communication when she was previously aware of the communication).

In any event, even if Allen had not waived his right to be present, his claim would still lack merit. Indeed, because the communication in question only involved the trial court responding to a juror's request to make a call to check on the status of a sick loved one, the communication was related to the "comfort and convenience of the jury," which could not have resulted in prejudice to Allen, even in his absence. Hanifa, supra, 269 Ga. at 807. Allen's claim is without merit.

Judgment affirmed. All the Justices concur.