301 Ga. 728
FINAL COPY

S17A0826.  BROWN v. THE STATE.

HINES, Chief Justice.

Following the denial of her motion for new trial, as amended, Jessica Lee

Brown appeals her conviction for malice murder in connection with the fatal

shooting of Joshua Gallimore.  She challenges the sufficiency of the evidence

and the effectiveness of her trial counsel, and she further complains that the trial

court deprived her of a fair trial and failed to provide her with counsel for this

appeal.  Finding the challenges to be unavailing, we affirm.[1]

1. We first address Brown's contention that she has been denied her right

to the appointment of appellate counsel.  Brown asserts that her last attorney

---

[1] The murder occurred on May 20, 2010.  On July 12, 2010, a Bleckley County grand jury returned an indictment against Brown charging her only with malice murder.  She was tried before a jury March 20-23, 2012, and found guilty of the charge.  On March 23, 2012, Brown was sentenced to life in prison.  Trial counsel filed a motion for new trial on Brown's behalf on March 30, 2012, and the motion was amended by new counsel on April 20, 2012 and again on April 14, 2014.  The motion for new trial, as amended, was denied on February 24, 2016.  A pro se notice of appeal was filed on March 4, 2016, and the case was docketed in this Court for the April 2017 term.  The appeal was submitted for decision on the briefs.  Many of Brown's enumerations "overlap with each other and will be grouped together accordingly." *Atkinson v. State*, 301 Ga. 518, 519, n. 2 (801 SE2d 833) ( 2017).

works for the public defender's office but abandoned the case without notification, and she alleges that, after this appeal was docketed, she submitted to that office an application for an attorney which has not yet been acted on. The record shows, however, that Brown retained trial counsel and paid him out of her personal funds, and both attorneys who represented her on motion for new trial were from the same private law firm. In one of her filings in this Court, Brown admits that she was represented on motion for new trial by retained counsel. The trial court explicitly informed Brown that she had the right to counsel for her motion for new trial and for her appeal and that if she could not afford an attorney, she must notify the court so that it could provide her with sufficient counsel. But the record does not contain any request for leave to proceed as a pauper, any attempt to establish Brown's indigency, or any request for the appointment of counsel. See Uniform Superior Court Rule 29.2.

It is true that "an indigent has the right to appointed counsel to assist him on direct appeal and an individual desiring an appeal need not, once a responsible state authority knows of the desire to appeal and knows of the status of indigency, specifically request appointment of appellate counsel." *Trauth v. State*, 295 Ga. 874, 875-876 (1) (763 SE2d 854) (2014) (citations and

punctuation omitted). Nevertheless, where, as here, a defendant is represented

by retained counsel at trial and on motion for new trial,

> it must be made known to the trial court or some responsible state
> official that the defendant is indigent and cannot afford retained
> counsel to pursue an appeal. If the trial court has no reason to
> believe that the defendant is indigent and cannot afford the services
> of retained counsel for the purpose of appeal, it is under no duty to
> inquire as to the defendant's indigency and may presume that his
> retained counsel will protect his appellate rights.

*Hopkins v. Hopper*, 234 Ga. 236, 238 (3) (215 SE2d 241) (1975). See also

*Watkins v. State*, 340 Ga. App. 218, 221 (1) (797 SE2d 144) (2017). Moreover,

the trial court specifically informed Brown of her right to appointed counsel in

the event of indigence for her appeal as well as her motion for new trial. Cf.

*Watkins*, 340 Ga. App. at 221-222 (1). In these circumstances, and in the

absence of any proof of indigency or request in the trial court for appointed

counsel, the trial court had no reason to make a determination as to whether

Brown was indigent and entitled to appointed counsel on appeal, and we cannot

conclude that Brown has been deprived of her right to appellate counsel or that

a remand for appointment of such counsel is either necessary or appropriate.

2. Construed to support the verdict, the evidence showed the following.

Brown dated Gallimore for about a year and a half, she lived with him in his

trailer for most of that time, and they separated about three months before Gallimore was killed. After the separation, Brown continued to see Gallimore periodically and do things for him, and she told his father that if she could not have him, nobody would have him. On May 19, 2010, Brown loaned her car to Gallimore for him to use to handle some business that afternoon. Instead, Gallimore and his friend Charles Webb drove to see Gallimore's new girlfriend. Brown became upset after hearing a woman in the background during a phone call with Gallimore, and Brown texted him that he had "f***ed up" and that she hated him for what he did. She called the police to report that Gallimore would not bring her car back. Gallimore and Webb finally returned to Gallimore's trailer about 1:00 a.m. on May 20, which was the last time that Gallimore was seen alive. His last phone contact with Brown occurred at 6:11 a.m. that morning, and his last communication with anyone occurred at 1:54 p.m. that afternoon. Brown's car was returned to her around noon on the same day at the nursing home where she worked, and she left her job at 2:10 p.m.

Webb testified that, although it was not unusual to see Gallimore infrequently, Brown asked Webb, on May 21, to check on Gallimore because she thought something was wrong, and no one else ever expressed a similar

concern to Webb about Gallimore. Brown never asked police to do any sort of welfare check on Gallimore, but, on May 25, she finally convinced Gallimore's cousin to go with her to check on him. Another friend of Gallimore's met them there, entered his trailer, and then screamed for Brown to call 911. Gallimore was dead, and his body was in a "moderate to marked" state of decomposition. The medical examiner concluded that Gallimore had suffered eight gunshot wounds to his head in rapid succession and had been deceased for three to ten days. Police found no evidence of any weapons, drugs, burglary, or robbery, and Brown was the only person known to have conflict with Gallimore.

Law enforcement officials interviewed Brown on three consecutive days. The first interview occurred on May 25, soon after the discovery of Gallimore's body. At that time, the bodily decomposition was "so bad" that police did not know that Gallimore had been shot, and no one had mentioned that possibility. Indeed, police did not even know whether Gallimore had died of natural causes, an accident, or a homicide. Yet Brown asked if he had been shot. On May 26, she explained that she had done "everything" for Gallimore, felt "underappreciated," burned and bleached his clothes after they broke up, and felt disrespected when he took her car to see another woman. On May 27,

5

Brown admitted that she was at Gallimore's residence on May 20, that she was upset with him, and that things "went bad."  At trial, Brown testified that she went straight home after work on May 20 and that her brother then took her to her cousin's house, where she stayed until late that evening when her brother gave her a ride home.

Brown argues that the circumstantial evidence was not sufficient to support her conviction for murder, and she specifically complains that no murder weapon was found, that there is no proof of motive or of malice, and that someone else could have killed Gallimore.  Under former OCGA § 24-4-6,[2] "in order to warrant a conviction based solely upon circumstantial evidence, the proven facts must be consistent with the hypothesis of guilt and must exclude every reasonable theory other than the guilt of the accused."  *Roberts v. State*, 296 Ga. 719, 721 (1) (770 SE2d 589) (2015) (citation omitted).

> But not every hypothesis is a reasonable one, and the evidence need not exclude every conceivable inference or hypothesis – only those that are reasonable. Whether an alternative hypothesis raised by the defendant is "reasonable" is a question committed principally to the jury, and where the jury is authorized to find that the evidence,

---

[2] This case was tried under the former Evidence Code.  Former OCGA § 24-4-6 appears in the new Evidence Code as OCGA § 24-14-6.

though circumstantial, was sufficient to exclude every reasonable hypothesis save that of the guilt of the accused, we will not disturb that finding unless it is insupportable as a matter of law.

*Gibson v. State*, 300 Ga. 494, 495 (1) (796 SE2d 712) (2017) (citations and punctuation omitted).  See also *Nichols v. State*, 292 Ga. 290, 291 (736 SE2d 407) (2013) ("Questions about the reasonableness of hypotheses, which would include the possibility of another perpetrator, are for the jury to decide in cases predicated on circumstantial evidence."  (citations omitted)).

In this case, the evidence showed that Brown wanted to prevent Gallimore from being with any other woman, that she was angry with him for using her car to see another woman, that she admitted going to Gallimore's house where things "went bad," that he was shot eight times, and that Brown attempted to have persons other than the police check on him.  Thus, the circumstantial evidence included proof of Brown's motive, her opportunity for the killing, her malicious intent, her subsequent belief, which was unique to her, that something was wrong with Gallimore, and her failure to inform the police of that belief. See *Benson v. State*, 294 Ga. 618, 621 (1) (754 SE2d 23) (2014); *Walden v. State*, 289 Ga. 845, 846 (1) (717 SE2d 159) (2011); *Bryant v. State*, 282 Ga. 631, 634 (1) (651 SE2d 718) (2007).  Moreover, although Brown questions the

7

exact time of death, she appeared to know specific information about the death before police knew it, and she made incriminating admissions, which she contradicted at trial, that placed her in Gallimore's home when things "went bad" near the probable time of death. See *Walden*, 289 Ga. at 846 (1); *Phillips v. State*, 287 Ga. 560, 561 (1) (697 SE2d 818) (2010). Cf. *Carter v. State*, 239 Ga. 509, 515-516 (238 SE2d 57) (1977). Under the evidence presented in this case, the jury was not required to accept Brown's theory that someone else committed the murder. See *Grissom v. State*, 296 Ga. 406, 408 (1) (768 SE2d 494) (2015). As for the absence of the murder weapon, "the State need not admit into evidence the weapon used by the defendant in order for the defendant to be found guilty of the crime involving the weapon." *Allen v. State*, 297 Ga. 702, 703-704 (2) (777 SE2d 680) (2015) (citation and punctuation omitted). "Although the State is required to prove its case with competent evidence, there is no requirement that it prove its case with any particular sort of evidence." *Plez v. State*, 300 Ga. 505, 506 (1) (796 SE2d 704) (2017). The evidence that was admitted at trial, though circumstantial, was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Brown was guilty of the malice murder of Gallimore and to find that the State excluded every reasonable

8

hypothesis other than Brown's guilt. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979); former OCGA § 24-4-6. See also *McKinney v. State*, 300 Ga. 562, 566-567 (2) (797 SE2d 484) (2017); *Mullinax v. State*, 273 Ga. 756, 757 (1) (a) (545 SE2d 891) (2001).

3. Many of Brown's enumerations of error cannot be reached in this appeal. She complains that, although the indictment alleges that she shot Gallimore, she was not indicted for the offense of possession of a firearm or aggravated assault, and neither of those crimes was proved. To the extent that Brown is further arguing that the evidence is not sufficient, her argument is fully answered in Division 2, supra, with respect to malice murder, and she presents nothing for review with respect to aggravated assault or possession of a firearm because she was not convicted or sentenced for either of those offenses. See *Wallin v. State*, 270 Ga. 889, 890 (514 SE2d 828) (1999). To the extent that Brown challenges the indictment itself, her challenge is waived due to her failure to raise it in the trial court. See *Bighams v. State*, 296 Ga. 267, 269-270 (2) (765 SE2d 917) (2014); *Thompson v. State*, 286 Ga. 889, 890 (2) (692 SE2d 379) (2010), overruled on other grounds, *State v. Kelly*, 290 Ga. 29, 32 (1) (718 SE2d 232) (2011).

9

With respect to certain other alleged errors that Brown asserts deprived her of a fair trial, including the selection of a juror who recognized Brown from working with her, the admission of hearsay testimony, and the prosecutor's use of leading questions, these arguments also have been waived as no proper objection was raised in the trial court, and plain error review is unavailable even for the evidentiary matters because, as noted in footnote 2, supra, Brown was tried under the former Evidence Code. See *Atkinson v. State*, 301 Ga. 518, 522 (3), n. 5 (801 SE2d 833) (2017). As for Brown's contention that she heard the jury foreman say that she was guilty during her testimony, her post-verdict objection was untimely because she knew of the alleged misconduct prior to the verdict.[3] See *Parker v. State*, 249 Ga. App. 509, 511-512 (2) (548 SE2d 475) (2001); see also *Morakes v. State*, 201 Ga. 425, 431 (3) (40 SE2d 120) (1946).

The jury selection and juror misconduct issues just mentioned cannot be reached in this appeal for the additional reason that they were raised only in Brown's amended brief, which was not filed until 43 days after the untimely

---

[3] We further note that the trial court was present at the time of the alleged misconduct, heard no such comment by any juror and, as it was authorized to do, denied Brown's oral request to set aside the verdict.

filing of her initial brief and enumeration of errors,[4] even though she had been granted an extension of time to file her brief and enumeration of errors and denied a second extension. And this case falls within the general rule that enumerations of error cannot be untimely asserted in a supplemental or amended brief.[5] See *Potter v. State*, 283 Ga. 576, 578 (3), n. 5 (662 SE2d 128) (2008). See also *Dallow v. Dallow*, 299 Ga. 762, 779 (6) (791 SE2d 20) (2016); *Willis v. Willis*, 288 Ga. 577, 582 (4) (707 SE2d 344) (2011). For the same reason, we do not reach three other alleged errors asserted by Brown: the selection of an "all-white" jury;[6] the denial of a motion for mistrial based on statements made

---

[4] The untimely filing of Brown's initial brief does not require dismissal of this appeal, as this Court had not issued an order setting a date by which the tardy brief must be filed. See *Heard v. State*, 274 Ga. 196, 198 (2) (552 SE2d 818) (2001). See also Supreme Court Rule 10 ("Failure to comply with an order of the Court directing the filing of a brief may cause the appeal to be dismissed and may subject the offender to sanctions.").

[5] Assuming that this Court is authorized to entertain a motion to supplement the enumeration of errors, Brown has made no such motion. Cf. *Pittman v. State*, 273 Ga. 849, 850 (4) (546 SE2d 277) (2001), disapproved on other grounds, *Ledford v. State*, 289 Ga. 70, 85 (14) (709 SE2d 239) (2011). Furthermore, Brown was not sentenced to death, this appeal was not orally argued, and we are not called upon here to reconsider *Henry v. State*, 278 Ga. 617, 620 (1) (604 SE2d 826) (2004) (a 4-3 decision in a death penalty case holding that an enumeration of error in a pre-argument amended appellate brief was properly before this Court and review was not limited to the plain error standard applicable to death penalty cases). But see id. at 621-623 (Carley, J., dissenting).

[6] Even assuming that Brown has properly asserted a challenge under *Batson v. Kentucky*, 476 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986), and that she made the required prima facie showing of racial discrimination, see *Toomer v. State*, 292 Ga. 49, 52 (2), n. 2

11

by a friend of Gallimore's after his testimony to other witnesses who had not yet testified;[7] and the failure of the attorneys who represented Brown on motion for

(734 SE2d 333) (2012), the prosecutor explained his reasons for the peremptory strikes to which defense counsel objected, those reasons were facially race-neutral, the trial court decided that the State's peremptory strikes were not racially motivated, and Brown has not demonstrated that the court's ultimate determination was clearly erroneous. See *Heard v. State*, 295 Ga. 559, 567 (3) (761 SE2d 314) (2014). See also *DeVaughn v. State*, 296 Ga. 475, 477 (2) (769 SE2d 70) (2015) (holding that a juror was not impermissibly stricken because of race where the juror said that he "was a minister and would not feel comfortable sitting in judgment of others"); *Stacey v. State*, 292 Ga. 838, 842 (3) (a) (741 SE2d 881) (2013) (prosecutor's explanations that certain potential jurors "had personal experiences which the prosecutor believed would render them unsuitable," including "conflicts with the criminal justice system," were facially race-neutral reasons for striking them); *Woolfolk v. State*, 282 Ga. 139, 142 (3) (644 SE2d 828) (2007) (the fact that a potential juror "slept through portions of the voir dire" was a race-neutral reason for striking him).

[7] Once defense counsel made the motion for mistrial, the trial court reinstructed all potential witnesses not to discuss the case with each other or with anyone else, and it examined the witness who made the statements and every other potential witness who had not been excused. When it denied the motion for mistrial, the trial court found that the statements did not involve the facts of the case or specific testimony and that all of the potential witnesses indicated that the statements would not have any effect on their testimony. Based on Brown's citation of *Rogers v. State*, 257 Ga. 590 (361 SE2d 814) (1987), in her amended brief, see id. at 592-593 (4), she apparently is complaining that a mistrial was required because the rule of sequestration was violated. Cf. *Bayer v. State*, 230 Ga. App. 708, 709 (1) (497 SE2d 266) (1998) (where the defendant also claimed that he was denied his right to a fair trial by a police officer's statements to potential witnesses after his testimony, but that claim was rejected because there was no evidence that the officer threatened, coerced, or held "captive" the witnesses or that they asked him not to talk to them). We note, however, that "a violation of the rule goes only to credibility, not admissibility, and the proper remedy is not a mistrial." *Glass v. State*, 289 Ga. 542, 548 (6) (c) (712 SE2d 851) (2011) (citations omitted). Where the improper communication occurs outside the courtroom and the trial court is assured that the communication will not affect the witnesses' testimony, "the appropriate remedy is for the trial court to admit the testimony and, if requested by opposing counsel, to charge the jury that it can consider the violation in assessing the witness[es'] credibility." *Quijano v. State*, 271 Ga. 181, 183 (2) (516 SE2d 81) (1999) (citation omitted).

new trial to call trial counsel as a witness to answer the allegations made against him in that motion. Brown also complains that Gallimore's father sat in the courtroom for the entire trial prior to his testimony, but the record shows only that, after defense counsel invoked the rule of sequestration and before the jury or any witness was sworn, the trial court specifically excluded Gallimore's father from the courtroom at the behest of defense counsel.

4. Brown contends that trial counsel provided constitutionally ineffective assistance in several respects. Under *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984), to prevail on this claim, Brown must show both that her "counsel performed deficiently and that, but for the deficiency, there is a reasonable probability that the outcome of [her] trial would have been more favorable. While the test imposed by *Strickland* is not impossible to meet, the burden is a heavy one." *Speziali v. State*, 301 Ga. 290, 293 (2) (800 SE2d 525) (2017) (citation and punctuation omitted).

> To prove deficient performance, one must show that [her] attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide range of reasonable professional performance. Thus, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness

13

claim only if they were so patently unreasonable that no competent attorney would have followed such a course. If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the *Strickland* test, this Court is not required to examine the other.

*Capps v. State*, 300 Ga. 6, 8 (2) (792 SE2d 665) (2016) (citation omitted).

Although Brown's trial counsel was present at the hearing on her motion for new trial, the attorneys who were then representing her decided not to call trial counsel as a witness. "As we have explained, when trial counsel does not testify at the motion for new trial hearing about the subject, it is extremely difficult to overcome the presumption that his conduct was reasonable." *Faulkner v. State*, 295 Ga. 321, 327 (4) (758 SE2d 817) (2014) (citation and punctuation omitted).

Brown has presented her assertions of ineffective assistance to this Court in a cursory manner,[8] and most of them involve her trial counsel's alleged

---

[8] Two of those assertions were not preserved for appellate review: that trial counsel failed to ensure that the jury was informed of the option to find Brown guilty of a lesser included offense; and that trial counsel abandoned her case during the post-conviction phase. Brown did not raise these claims in her amended motion for new trial, filed after she obtained new counsel, nor did she raise them at the hearing on that motion or obtain rulings on them from the trial court. See *Prince v. State*, 295 Ga. 788, 793 (2) (b) (764 SE2d 362) (2014). We note, however, that Brown does not even identify the lesser offense on which she claims counsel should have requested an instruction, and we fail to see how "trial counsel's performance [in this regard could be] objectively unreasonable given [Brown's] failure to adduce any testimony from trial counsel at the new trial hearing." *Reed v. State*, 294 Ga. 877, 882 (7) (b) (757 SE2d 84) (2014). As for Brown's claim of abandonment by trial counsel, the record shows that the trial court permitted his withdrawal after finding that he

14

failure to prepare for trial adequately and investigate information that she gave him and other potentially favorable evidence. In the absence of testimony by trial counsel or any other evidence to the contrary, Brown has made "no affirmative showing that the purported deficiencies in [her] trial counsel's representation were indicative of ineffectiveness and were not examples of a conscious and deliberate trial strategy." *Jones v. State*, 296 Ga. 561, 567 (4) (769 SE2d 307) (2015) (citation and punctuation omitted). Moreover, Brown has

> failed to present any evidence as to what further research would have revealed or how any additional information would have improved [her] position. To show prejudice on a claim that trial counsel failed to adequately investigate the case, [Brown] had to at least make a proffer as to what additional investigation would have uncovered, and not merely speculate that such information exists and would have made a difference.

*Lupoe v. State*, 300 Ga. 233, 241 (2) (b) (794 SE2d 67) (2016) (citations and punctuation omitted). See also *Hampton v. State*, 279 Ga. 625, 627-628 (4), (5) (619 SE2d 616) (2005). Although Brown herself testified at the hearing on her

---

properly gave the required notification, and new counsel promptly filed an amended motion for new trial. Thus, we fail to see how trial counsel's performance could be deficient in this respect or how Brown was prejudiced by his withdrawal. See *Veal v. State*, 301 Ga. 161, 169 (4) (800 SE2d 325) (2017).

motion for new trial, she did not proffer the testimony of any uncalled witness, a legally recognized substitute, or other potentially favorable evidence. See *Barge v. State*, 294 Ga. 567, 569 (2) (755 SE2d 166) (2014).

Brown claims that her trial counsel rendered ineffective assistance with regard to jury selection. She supports this claim by pointing to her testimony at the hearing on her motion for new trial that one juror, who recognized her from work but denied knowing her personally, had some disagreement with her and told others that she was guilty. This testimony was not supported by anything in the trial transcript or by any testimony of trial counsel, and "juror selection is a matter of trial tactics and strategy." *Capps*, 300 Ga. at 12 (2) (e). See also *Simpson v. State*, 298 Ga. 314, 318 (4) (781 SE2d 762) (2016) ("Which, and how many, prospective jurors to strike is a quintessential strategic decision." (citation and punctuation omitted)). Moreover, Brown's credibility "as a witness at the motion for new trial hearing was a matter for the trial court's discretion." *Harris v. State*, 279 Ga. 304, 308 (3) (d) (612 SE2d 789) (2005). Brown has not shown any other way that "counsel may have acted unreasonably during the jury selection process, and has not shown how, absent some deficiency in counsel's performance, a different jury would have been selected

16

that would have reached a result more favorable to [her] at [her] trial." *Clements v. State*, 301 Ga. 267, 271 (3) (a) (800 SE2d 552) (2017).

Brown also contends that her trial counsel failed to file motions or to object to various leading questions, hearsay, and illegal evidence. Brown does not, however, identify any specific motion that should have been filed. In any event, reasonable decisions as to whether to make a specific objection or motion are "ordinarily matters of trial strategy and provide no ground for reversal." *Ballard v. State*, 297 Ga. 248, 254 (6) (h) (773 SE2d 254) (2015) (citation and punctuation omitted). Because trial counsel's failure to make certain objections and motions may have amounted to strategic decisions, and because Brown never called counsel to question him concerning those decisions, she has failed to carry her burden of demonstrating that he provided deficient performance. See *Dyer v. State*, 278 Ga. 656, 660 (7) (604 SE2d 756) (2004).

Judgment affirmed. All the Justices concur.

17

Decided August 14, 2017.

Murder. Bleckley Superior Court. Before Judge Wall.

Jessica Lee Brown, <u>pro se.</u>

<u>Timothy G. Vaughn, District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Meyerhoefer, Assistant Attorney General</u>, for appellee.