302 Ga. 321
FINAL COPY

S17A1108. WIMBERLY v. THE STATE.

BOGGS, Justice.

Following a bench trial, appellant William Leroy Wimberly was found guilty of felony murder, aggravated assault, and possession of a firearm during the commission of a felony, in the death of Christopher Strickland.[1] He now appeals, asserting that the evidence was insufficient, that he received ineffective assistance of counsel, and that he was entitled to a new trial based on newly discovered evidence. For the reasons set forth below, we conclude these assertions are without merit and affirm.

Viewed in the light most favorable to the verdict, the evidence showed

---

[1] The crimes occurred on July 29, 2014. On November 10, 2014, a Decatur County grand jury indicted Wimberly on charges of felony murder, aggravated assault, and possession of a firearm during the commission of a felony. Following an August 14, 2015 bench trial, the trial court found him guilty on all counts, and sentenced him to life plus five years in prison. The court merged the aggravated assault count. Wimberly's motion for new trial was filed on October 6, 2015, refiled by new counsel on October 13, amended on April 12, 2016, and denied on August 19, 2016. His notice of appeal was filed on September 19, 2016. This case was docketed in this Court for the April 2017 term and submitted for a decision on the briefs.

that Josh Strickland lived with and dated Wimberly's daughter Brittney. A few days before July 29, 2014, Wimberly, while somewhat intoxicated, said in the presence of others that he would kill Josh if he "whipped" his minor granddaughter again. On July 29, Wimberly went to Josh and Brittney's home appearing intoxicated from alcohol and drugs. He sat and spoke with Josh, Brittney, and the victim, Josh's brother Christopher Strickland. At one point the four began arguing, and Brittney ordered Wimberly out of her home before she left for work.

A few minutes after Brittney left, the victim went to Wimberly's residence, and after a while, the two returned to Josh and Brittney's home where Wimberly apologized to Josh for his earlier behavior. Not long after Wimberly, Josh, and the victim sat down to talk, Wimberly and Josh began arguing again. Wimberly pulled out a pocket knife, but Josh and the victim were able to disarm him and eject him from the home.

About 15 minutes later, Wimberly returned to Josh and Brittney's home in his stepbrother's truck.[2] The victim went outside to talk with Wimberly while

---

[2] The stepbrother testified that Wimberly had been driving his truck on the night of the incident and identified the gun used to shoot the victim as the weapon he kept in the glove compartment of the truck.

Josh stayed inside. About two minutes later, the victim asked Josh to come outside, saying Wimberly wanted to talk. After Josh came out and stood in the doorway, he apologized to Wimberly for the fighting. The victim stood in between Josh and Wimberly throughout the conversation. Josh noticed that Wimberly had his hands behind his back. Wimberly stared at Josh the entire time and, after the conversation escalated, said, "well, I reckon I'm going to have to take both of you out." The victim rushed off the porch and tackled Wimberly. Josh rushed to help, but when he approached Wimberly and the victim, they had already separated. When Josh noticed Wimberly was holding a handgun, he began to wrestle with him and noticed blood on the ground. Josh was able to gain control of the gun, and after warning Wimberly "to stop several times," shot Wimberly. Josh got up, looked at the victim who was on the ground and mumbling, and asked him "if he was shot and he told me, yes. He said, [Wimberly] shot me."

Wimberly's father, who lived nearby with Wimberly, heard the commotion and came running. Josh made him get on his knees and held Wimberly and his father at gunpoint. Seconds later, a passerby pulled his vehicle up to the house. Josh ordered the driver out and instructed the passenger

3

to call 911. The victim died at the scene of a gunshot wound to the center of his chest that pierced his heart and liver. The medical examiner testified that the entrance wound indicated that the range of fire was "intermediate," meaning in general that the gun was fired at arm's length from the victim.

1. Wimberly argues that the evidence is insufficient that he committed aggravated assault because there was no evidence that he is the one who shot the victim. He points to Josh's statement to police that Josh did not see him shoot the victim, and that Josh, the victim, and Wimberly were all struggling over the gun when he saw blood.

> On appeal from a bench trial resulting in a criminal conviction, we view all evidence in the light most favorable to the trial court's verdict, and the defendant no longer enjoys the presumption of innocence. We do not re-weigh testimony, determine witness credibility, or address assertions of conflicting evidence; our role is to determine whether the evidence presented is sufficient for a rational trier of fact to find guilt beyond a reasonable doubt.

(Citation and punctuation omitted.) Dougherty v. State, 341 Ga. App. 120, 123 (799 SE2d 257) (2017).

Josh testified that when he jumped off the front porch, the victim and Wimberly "had already started to separate. And I went to jump on [Wimberly] and that's when I saw the gun in his hand." Josh testified that he did not hear a

4

shot, but as he began to tussle with Wimberly, the victim was already lying on the ground, not moving, "just kind of rolling a little bit," and that is when he noticed blood on the ground. Josh stated further that his finger was not on the trigger because Wimberly's hand was on the gun and that he had to twist the gun out of Wimberly's hand. The evidence also showed that the gun was fired at the victim's chest at arm's length. The evidence therefore was sufficient for the trier of fact to find that it was Wimberly who fired the shot that killed the victim. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Wimberly asserts that his trial counsel was ineffective.

> To prevail on a claim of ineffective assistance of counsel under Strickland v. Washington, 466 U. S. 668 (104 SC[t] 2052, 80 LE2d 674) (1984), an appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense.

(Citation and punctuation omitted.) Dunn v. State, 291 Ga. 551, 553 (4) (732 SE2d 524) (2012).

(a) Wimberly argues that counsel should have called four witnesses who testified at the hearing on the motion for new trial. "Decisions about which witnesses to call at trial are matters of trial strategy and tactics, and such

5

strategic and tactical decisions do not amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar circumstances." (Citations and punctuation omitted.) McDuffie v. State, 298 Ga. 112, 116 (2) (779 SE2d 620) (2015).

The first witness, who was working at a convenience store across the road on the night of the shooting, testified that she heard a commotion and then a gunshot, looked out the door and saw a man on his knees with another man holding a gun on him. She explained that five or ten minutes later, she heard two more gunshots. She did not recall seeing anyone lying on the ground. A second witness, who worked at the same convenience store, testified that she heard a gunshot, and when she looked across the street, she saw "one man standing with a gun and two on their knees," and moments later heard a second shot while she was on the phone with 911. This witness also testified that she did not see anyone lying on the ground. Trial counsel testified that he did not call these witnesses because he did not believe that their testimony "would add [to] or help" the defense. We cannot say that counsel's decision not to call them was unreasonable in light of the fact that neither witness saw anyone get shot, and the witnesses provided different testimony about the number of shots they heard

6

and when they heard them. The determination of which defense witnesses to call is a matter of trial strategy and tactics, and does not "amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar circumstances." (Citation omitted.) Washington v. State, 294 Ga. 560, 566 (3) (755 SE2d 160) (2014).

Wimberly argues that counsel should have called a third witness who testified at the hearing on the motion for new trial that when he pulled up to the home during the incident, Josh ordered the witness out and held him at gunpoint on his knees until police arrived. The witness explained that he observed both Wimberly and the victim lying on the ground to his left while the witness was on his knees in front of the truck Wimberly drove. Wimberly asserts that this evidence contradicts an investigator's testimony "that nothing happened in or near the truck." While the investigator did explain that he did not believe that the victim was shot in the truck because no blood was found there, he did not testify that nothing happened *near* the truck. In fact, he testified that the truck was parked close to the porch — about 15 feet away from where the victim was

lying.[3] Trial counsel was not asked why he chose not to call this witness, and "in the absence of evidence to the contrary, counsel's decisions are presumed to be strategic and thus insufficient to support an ineffective assistance of counsel claim." (Citation and punctuation omitted.) Clements v. State, 301 Ga. 267, 271 (3) (a) (800 SE2d 552) (2017). This witness's testimony was consistent with Josh's testimony about what occurred after the witness pulled up to the home, and the witness did not see anyone get shot. In this circumstance, Wimberly has not shown that counsel's failure to call this witness was so patently unreasonable that no competent attorney would have done the same. Moreover, even if we concluded that counsel should have called this witness at trial, Wimberly has not shown that there is a reasonable probability that the outcome of the trial would have been different had counsel done so. See Daughtry v. State, 296 Ga. 849, 858 (2) (d) (770 SE2d 862) (2015).

Finally, Wimberly argues that trial counsel should have called his father, who testified at the hearing on the motion for new trial that Wimberly did not appear upset on the night of the shooting, and that there was no indication that

---

[3] Wimberly told police that he was in the truck when Josh and the victim "beat[ ] him up bad."

8

he had been in a physical altercation with Josh and the victim earlier in the evening. The father testified further that the victim and Josh came to the home he shared with Wimberly and said that they wanted to talk to Wimberly, who willingly went next door to Josh's home. He explained that moments later, he heard "screaming and hollering," and when he walked over to Josh's home, Josh ordered him to get on his knees. Trial counsel testified that he did not call Wimberly's father because he did not believe his testimony would have aided the defense: "Things just at the time felt like any additional testimony he could provide had already been presented to the Court. Just thought it would just really have been a waste of time, in my opinion. I didn't think he had anything new to add." But Wimberly argues that his father's testimony would have contradicted Josh's testimony about his demeanor. However, we cannot say that counsel's decision was unreasonable in light of similar testimony presented by Wimberly's stepbrother that Wimberly seemed "normal" in the evening prior to the shooting. See Jackson v. Virginia, supra.

(b) Wimberly asserts that trial counsel was ineffective in failing to object to the introduction of prior difficulties between him and Josh because the evidence was irrelevant and the State failed to comply with the notice

9

requirement of OCGA § 24-4-404 (b). He complains of the testimony of two witnesses who stated that Wimberly threatened to kill Josh if Josh disciplined Wimberly's granddaughter. But evidence of Wimberly's statement was admissible as intrinsic evidence, bearing directly on the charged conduct, and not subject to the 404 (b) notice requirements. See Paul S. Milich, Georgia Rules of Evidence § 11:3, at pp. 243-253 (2017-2018 ed.) (intrinsic, or inextricably intertwined, evidence consists of those facts that bear directly on the charged conduct and is not subject to the notice provisions of OCGA § 24-4-404 (b); "[w]hen the facts and circumstances of the case show that the subject crime was directly related to or motivated by other, uncharged wrongs, the other wrongs are admissible"); Brooks v. State, 298 Ga. 722, 726 (2), n.11 (783 SE2d 895) (2016) ("Evidence is intrinsic if it is (1) an uncharged offense arising from the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense.[Cit.]"). And, because Wimberly's statement was "integral to the narrative surrounding the crimes, its probative value was not substantially outweighed by the risk of undue prejudice." (Citation, punctuation and footnote omitted.) Brewner v. State, 302 Ga. 6, 14

10

(III) (804 SE2d 94) (2017).

3. Wimberly argues that the trial court abused its discretion in denying his motion for new trial based on newly discovered evidence. OCGA § 5-5-23 provides:

> A new trial may be granted in any case where any material evidence, not merely cumulative or impeaching in its character but relating to new and material facts, is discovered by the applicant after the rendition of a verdict against him and is brought to the notice of the court within the time allowed by law for entertaining a motion for a new trial.

This Court in Timberlake v. State, 246 Ga. 488, 491 (271 SE2d 792) (1980), set forth the requirements that a defendant must show to obtain a new trial on newly discovered evidence:

> (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.

See Glover v. State, 296 Ga. 13, 15 (2) (764 SE2d 826) (2014).

At the hearing on the motion for new trial, Wimberly produced the testimony of a witness, his father's brother-in-law, who had done some work on

a cylinder for Josh's uncle. This witness testified that when Josh arrived to pick up the cylinder, Josh became upset about the amount of the bill and told the witness, "I ain't paying you that damn much, old man, for that damn — for that cylinder . . . old man, I shot and killed my damn brother, thinking it was old Leroy, and I shot old Leroy. But . . . I don't mind shooting a damn 'nother one." Wimberly argues that this evidence of Josh admitting that he shot the victim is clearly material and would have likely produced a different verdict. The witness testified that Josh made this statement to him on or about June 23, 2015, prior to Wimberly's August 2015 trial, but before sentencing, and that he informed trial counsel of the statement after Wimberly was sentenced.

Assuming without deciding that Wimberly has satisfied the first five requirements of Timberlake, this witness's post-trial testimony would only have had the effect of impeaching Josh's testimony. See Chance v. State, 291 Ga. 241, 245-246 (6) (728 SE2d 635) (2012) (testimony presented at new trial hearing — that co-indictee confessed to witness that he, not the defendant, shot victim — was impeaching testimony and did not establish as fact that co-indictee's trial testimony was knowingly and wilfully false). Because Wimberly failed to satisfy the sixth requirement of Timberlake, the trial court did not err

12

in denying his motion for new trial on the basis of newly discovered evidence.

Judgment affirmed.  All the Justices concur, except Grant, J., who concurs in judgment only as to Division 3.

Decided October 16, 2017.

Murder. Decatur Superior Court. Before Judge Cato.

Meghan A. Lane, for appellant.

Joseph K. Mulholland, District Attorney, Moruf O. Oseni, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General, for appellee.