**FOURTH DIVISION**
**RICKMAN, C. J.,**
**DILLARD, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**April 26, 2023**

# In the Court of Appeals of Georgia

A23A0155. WILLIAMS v. THE STATE.

DILLARD, Presiding Judge.

Following a bench trial, the trial court convicted Angelo L. Williams on one count of family violence battery, two counts of kidnapping, one count of theft by taking, two counts of aggravated battery, and one count of aggravated assault. Williams now appeals, challenging the sufficiency of the evidence supporting his kidnapping convictions and arguing the trial court erred in denying his claim for ineffective assistance of counsel. For the following reasons, we affirm his convictions and the denial of his motion for new trial.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that in November 2014, Williams and the victim, A. B., began dating. Several months

---

[1] *See, e.g.*, *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018).

later, he moved into the apartment A. B. shared with her young daughter. Not long after that, the couple began to argue frequently. And over the course of the next few months, those arguments became increasingly belligerent. Indeed, the couple's deteriorating relationship eventually culminated in a violent altercation on June 19, 2016, in which Williams dragged A. B. from the living room into her daughter's bedroom and struck her in the face—giving her a black eye. A. B. did not immediately call the police, fearing Williams would try to stop her; but the next day—after Williams left for work—she contacted the police and went to the hospital for treatment. A police officer interviewed her and documented her injuries.

Following this incident, A. B. kicked Williams out of her apartment. But within a few days, Williams contacted A. B. and attempted to salvage their relationship. And on June 25, 2016, she agreed to meet him near her apartment complex's mailboxes to talk. Then, after a brief conversation, Williams asked A. B. to drive him to a gas station convenience store. She agreed to do so, hoping it would appease him. But after arriving at the store, Williams went inside, and A. B. immediately drove off to avoid yet another confrontation. Undeterred, Williams quickly found a ride back to A. B.'s apartment complex. In fact, he arrived shortly after A. B. and startled her as she was speaking with a neighbor. Fearing for her safety, A. B. attempted to run

away, but Williams caught up to her and dragged her through the parking lot by the arm, behind another one of the apartment buildings and to the edge of some nearby woods—resulting in her sustaining several bruises and abrasions. There, A. B. fell to the ground; at which point, Williams fled with her cell phone. Meanwhile, A. B.'s neighbor—who witnessed the incident—called the police.

Not long after that, Williams again initiated contact with A. B., apologizing and again seeking to repair their relationship. A. B. agreed, and although Williams did not move back into her apartment, they continued speaking with each other over the next several months. But in late September 2016, the estranged couple got into an another argument while speaking on the phone. The next day (on September 29, 2016), Williams called A. B. nearly 20 times, demanding that they meet. She refused to do so, but at some point after midnight on October 1, 2016, Williams showed up unannounced at her apartment. And when A. B. walked out to speak with him, Williams grabbed her new cell phone, looked at her call log, and became furious because she had been receiving calls from another man. A. B. explained that these calls were work related, but Williams's anger did not subside. Instead, he destroyed A. B.'s phone and began dragging her toward the apartment complex's mailboxes and then into a wooded area in between the buildings—telling her to "shut the fuck up"

3

as she protested. In doing so, Williams held his hand over A. B.'s nose and mouth, so she briefly lost consciousness during the attack.

Three neighbors (two females and one male)—who shared an apartment in a building near the wooded area—heard yelling, opened their door, and saw Williams striking A. B. in her face. And by this time, A. B. had regained consciousness and pleaded with the neighbors to call the police. And as the male neighbor turned to go back inside, Williams became distracted and A. B. tried to run for it. But Williams caught her as she reached the parking lot and continued hitting her in the face as she lay across the hood of a car. A moment later, the male neighbor who witnessed the altercation reopened his door and yelled that he had called the police. Williams then fled, and A. B. ran back to her apartment and had her daughter call 911. Police and an ambulance arrived on the scene shortly after that and transported A. B. to the hospital. She remained there for three days, receiving treatment for several injuries (including multiple facial fractures).

Later, the State charged Williams, via indictment, with one count of family violence battery, two counts of kidnapping, two counts of theft by taking, two counts of aggravated battery, one count of aggravated assault, and one count of criminal trespass. The case then proceeded to trial; and on the first day, Williams waived his

right to a jury and demanded that he be allowed to represent himself. Consequently, following a *Faretta* hearing,[2] the trial court granted his request but appointed Williams's now former trial counsel to serve in a standby capacity.

The State then presented the evidence described above. And during A. B.'s testimony (in addition to recounting the details of Williams's attacks), she admitted on direct and cross examination that, after the October 1, 2016 incident, she nonetheless traveled to North Carolina—where Williams was staying with family and avoiding arrest—to spend Thanksgiving with him in a final (but ultimately unsuccessful) attempt to repair their tumultuous relationship. Following the first part

[2] *See Faretta v. California*, 422 U.S. 806, 835-36 (V) (95 SCt 2525, 45 LE2d 562) (1975) (holding that because the Sixth Amendment to the United States Constitution implies the right to self-representation, if a defendant makes a pre-trial, unequivocal assertion of the right to self-representation, the request must be followed by a hearing to ensure the defendant knowingly and intelligently waives the "traditional benefits associated with the right to counsel" and understands the "disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open" (punctuation omitted)); U.S. Const. Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence."); Ga. Const., Art. I, Sec. I, Par. XII ("No person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state.").

of A. B.'s testimony, and that of the surgeon who treated her injuries,[3] Williams informed the trial court that he no longer wished to represent himself—at which point standby counsel agreed to reassume his position as trial counsel.

After the State rested its case, Williams moved for a directed verdict as to all counts in the indictment. And upon hearing argument from both parties, the trial court granted Williams's motion as to a theft-by-taking count (concerning A. B.'s vehicle) but denied it as to the remaining counts.[4] Williams then presented his case and testified in his own defense, claiming A. B. exaggerated the details of their altercations and that her desire to maintain their relationship undermined her credibility. But at the trial's conclusion, the trial court found Williams guilty on all remaining counts.

Subsequently, Williams obtained new counsel and filed a motion for new trial, in which he argued, *inter alia*, that his trial counsel rendered ineffective assistance. The trial court held a hearing on the matter, during which Williams's trial counsel testified. Ultimately, the trial court denied Williams's motion. This appeal follows.

---

[3] The State bifurcated A. B.'s testimony to accommodate the surgeon's schedule.

[4] The State previously *nolle prossed* the criminal-trespass charge.

1. Williams maintains the evidence was insufficient to sustain his two kidnapping convictions, specifically arguing that the State failed to prove the essential element of asportation. We disagree.

When evaluating the sufficiency of the evidence supporting a criminal conviction on appeal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt."[5] And similar to appeals from a jury trial resulting in a criminal conviction, on appeal from a bench trial, we view all evidence in "the light most favorable to the trial court's verdict, and the defendant no longer enjoys the presumption of innocence."[6] Indeed, just as with appeals from a jury trial, in reviewing a conviction resulting from a bench trial, "we

---

[5] *Jones v. State*, 307 Ga. 505, 505 (1) (837 SE2d 288) (2019) (punctuation omitted); *see Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (noting the relevant question is, after viewing the evidence in the light most favorable to the prosecution, whether any rational jury could find the essential elements of the crime beyond a reasonable doubt).

[6] *Jones*, 307 Ga. at 506 (1) (punctuation omitted); *accord Wimberly v. State*, 302 Ga. 321, 323 (1) (806 SE2d 599) (2017).

do not re-weigh testimony, determine witness credibility, or address assertions of conflicting evidence."[7]

Turning now to the relevant statute, OCGA § 16-5-40 (a) provides: "A person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will." And under OCGA § 16-5-40 (b) (1), "[f]or the offense of kidnapping to occur, slight movement shall be sufficient; provided, however, that any such slight movement of another person which occurs while in the commission of any other offense shall not constitute the offense of kidnapping if such movement is merely incidental to such other offense." Importantly, subsection (b) (2) of the same statute provides that "[m]ovement of the victim is not considered merely incidental to another offense if it: (A) conceals or isolates the victim, (B) makes the commission of the other offense substantially easier, (C) lessens the risk of detection, or (D) is for the purposes of avoiding apprehension."[8]

---

[7] *Jones*, 307 Ga. at 506 (1) (punctuation omitted); *accord Wimberly*, 302 Ga. at 323 (1).

[8] OCGA § 16-5-40 (b) (2) (A)-(D).

8

In this matter, Count 2 of the indictment charged Williams with the offense of kidnapping, alleging that on June 25, 2016, he "did unlawfully abduct and steal away [A. B.] without lawful authority or warrant and held such person against her will, said act resulting in bodily injury to [A. B.], said act being separate and distinct from Count 4 of this Indictment." Count 4 of the indictment similarly charged Williams with kidnapping A. B. for the incident occurring on October 1, 2016, noting that it was a separate act from Count 2. Importantly, as discussed above, the evidence showed in both incidents that Williams dragged A. B. against her will away from her apartment building toward another building and wooded area near the complex. And while Williams claims A. B.'s testimony was vague and inconsistent, "we leave to the fact-finder the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts."[9] As a result, the

---

[9] *Downer v. State*, 314 Ga. 617, 623 (1) (878 SE2d 537) (2022) (punctuation omitted); *accord Smith v. State*, 308 Ga. 81, 84 (1) (839 SE2d 630) (2020); *see McCord v. State*, 305 Ga. 318, 321 (1) (825 SE2d 122) (2019) (noting in a bench trial that it was for the trial court as factfinder to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence).

evidence was sufficient to prove the asportation element of Williams's two kidnapping convictions.[10]

2. Williams also contends the trial court erred in denying his claim that his trial counsel rendered ineffective assistance by failing to review cell-phone records that allegedly undermined the victim's credibility. Again, we disagree.

To evaluate Williams's claim of ineffective assistance of counsel, we apply the two-pronged test established by the Supreme Court of the United States in *Strickland v. Washington*,[11] which requires him to show that his trial counsel's performance was

---

[10] *See Dennis v. State*, 293 Ga. 688, 689-90 (1) (748 SE2d 390) (2013) (holding that defendants moving victims from their own vehicle before shooting them was sufficient to support kidnapping-with-bodily-injury charge); *Fuller v. State*, 363 Ga. App. 217, 222-23 (1) (b) (871 SE2d 79) (2022) (holding that moving victim outside of store after robbery and forcing her to lie down while defendant escaped was sufficient evidence of asportation); *Alexander v. State*, 348 Ga. App. 859, 865-66 (1) (b) (825 SE2d 405) (2019) (finding that moving robbery victim into a bathroom satisfied the asportation element by isolating victim, concealing victim, and making the robbery substantially easier); *Taylor v. State*, 344 Ga. App. 122, 131-32 (1) (g) (809 SE2d 76) (2017) (concluding that moving victim from doorway into interior room satisfied asportation element because it "concealed and isolated [the victim] from anyone who would have happened by the door to the apartment at the time" and also reduced the likelihood that the robbery would be detected); *Arnold v. State*, 324 Ga. App. 58, 63 (2) (749 SE2d 245) (2013) (holding that defendant's dragging of victim out of her house, through the yard, and into neighbor's yard was sufficient to sustain asportation element of kidnapping).

[11] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

"deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[12] Importantly, should a defendant "fail to meet his burden on one prong of this two-prong test, we need not review the other prong."[13] Additionally, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[14] In fact, the reasonableness of counsel's conduct is "examined from counsel's perspective at the time of trial and under the particular circumstances of the case[.]"[15] And decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if "they were so patently unreasonable that no competent

---

[12] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland*, 466 U.S. at 687 (III); *Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

[13] *McAllister v. State*, 351 Ga. App. 76, 93 (6) (830 SE2d 443) (2019); *accord Gomez v. State*, 300 Ga. 571, 573 (797 SE2d 478) (2017).

[14] *Chapman*, 273 Ga. at 350 (2); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

[15] *Lockhart v. State*, 298 Ga. 384, 385 (2) (782 SE2d 245) (2016).

attorney would have followed such a course."[16] Moreover, unless clearly erroneous, this Court will "uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de novo*."[17] With these guiding principles in mind, we turn now to Williams's specific claim of error.

Prior to trial, Williams's trial counsel hired a forensic data recovery company to extract data from Williams's cell phone that he thought would be helpful to his defense. Particularly, trial counsel obtained several photographs of Williams and A. B. together in North Carolina during Thanksgiving 2016 and admitted them into evidence at trial to demonstrate that A. B. was not afraid of Williams. -04; T12. 12-13 But the extracted data also included some text messages. Specifically, the texts included a message purportedly from A. B. to Williams, dated during the time they were together in North Carolina, in which A. B. purportedly told Williams that her

---

[16] *Id.*

[17] *Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014); *accord Hall v. State*, 351 Ga. App. 695, 702 (2) (832 SE2d 669) (2019); *see Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014) (holding that "[i]n reviewing a claim of ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal conclusions de novo").

injuries from the October 1 altercation were self-inflicted, and that she did so at the behest of her ex-husband in order to incriminate Williams. This message was not, however, admitted into evidence at trial. And during the hearing on Williams's motion for new trial, when asked about the text, trial counsel acknowledged that it was part of the extracted data but he could not recall if he reviewed it, as his focus was on admitting into evidence the Thanksgiving photographs of A. B. and Williams appearing happy together as a couple.

As a result of the foregoing, Williams argues the trial court erred in denying this claim of ineffective assistance because his counsel's failure to admit this text—which he asserts undermined A. B.'s credibility at the very least—prejudiced his defense. We are unpersuaded.

During the hearing on Williams's motion for new trial, A. B. vociferously denied sending the text at issue, surmising that Williams must have sent the message using her cell phone, given that it was not in her possession every moment she was with him in North Carolina. Nevertheless, setting aside whether trial counsel's failure to review and admit this text message constituted deficient performance, Williams has not shown that "the error was so serious that it likely affected the outcome of the

trial."[18] Indeed, satisfaction of this test is "a difficult endeavor."[19] Regardless, simply because a defendant has demonstrated his trial counsel performed deficiently "does not lead to an automatic conclusion that he was prejudiced by counsel's deficient performance."[20]

Here, A. B. testified in some detail about the three altercations with Williams that resulted in the charges outlined in the indictment, including the fact that he dragged her toward a wooded area near her apartment complex and repeatedly struck her in the face during the October 1st incident. In addition, A. B.'s neighbors witnessed both the June 25th and October 1st incidents and corroborated A. B.'s accounts. And even Williams admitted to "pop[ping]" A. B. in the eye during the latter encounter. So, the contention in the purported text message that A. B.'s injuries

---

[18] *Lawson v. State*, 365 Ga. App. 87, 96 (3) (877 SE2d 616) (2022) (punctuation omitted); *accord Brown v. State*, 307 Ga. 24, 33 (6) (834 SE2d 40) (2019); *Jones v. State*, 305 Ga. 750, 755 (4) (827 SE2d 879) (2019) (noting that to obtain a new trial based on ineffective assistance of counsel, the defendant must show the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious that they likely affected the outcome of the trial).

[19] *Lawson*, 365 Ga. App. at 96 (3) (punctuation omitted); *accord Brown,* 307 Ga. at 33 (6).

[20] *Lawson*, 365 Ga. App. at 96 (3) (punctuation omitted); *accord Brown,* 307 Ga. at 33 (6).

were self-inflicted beggars belief—as the trial court noted (more diplomatically) in its order denying Williams's motion for new trial. Indeed, the male neighbor—who witnessed the October 1st assault and called the police—testified that as he observed Williams striking A. B., he heard a noise that sounded like "bones breaking." Furthermore, the investigating detective who interviewed A. B. after the October 1st assault testified that her eyes were swollen shut when he spoke to her in the hospital. Additionally, the surgeon who treated A. B. explained that the bone "floor of the eye socket was shattered on both sides" and her left cheek bone was "broken in three or four different places as well." Given these circumstances, the evidence supporting Williams's convictions was overwhelming, and, thus, he failed to demonstrate a reasonable probability that, but for the alleged deficiency of his trial counsel, the trial

would have resulted in a different outcome.[21] Accordingly, the trial court did not err in denying Williams's claim of ineffective assistance of counsel.

For all these reasons, we affirm Williams's convictions and the denial of his motion for new trial.

*Judgment affirmed. Rickman, C. J. and Pipkin, J., concur.*

---

[21] *See Newman v. State*, 309 Ga. 171, 181 (2) (g), 183-84 (2) (i) (844 SE2d 775) (2020) (concluding that even if trial counsel rendered deficient performance in failing to object to four particular questions or defendant's three prior convictions, in light of overwhelming evidence of guilt, defendant could not show prejudice); *Brown*, 307 Ga. at 33 (6) (a) (holding that even if trial counsel performed deficiently by failing to object when investigator's testimony amounted to improper character evidence, defendant failed to prove requisite prejudice for claim of ineffective assistance of counsel, given overwhelming evidence of defendant's guilt); *Parrish v. State*, 362 Ga. App. 392, 401-02 (1) (b) (868 SE2d 270) (2022) (holding that even if trial counsel's submission of statement to police contained contradictions and amounted to deficient performance, evidence supporting defendant's manslaughter conviction (in the form of multiple witnesses) was overwhelming and, therefore, he failed to show that trial counsel's actions prejudiced him); *Scales v. State*, 356 Ga. App. 164, 167-68 (2) (a) (846 SE2d 418) (2020) (finding that, given overwhelming evidence, any error by defense counsel in failing to object to the State improperly placing defendant's character into evidence did not prejudice defendant, and thus, could not amount to ineffective assistance).